

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 2, 2018**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ZAIDA MARIA GRACIA, | § | CASE NO. 18-50061-rlj13 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

On May 17, 2018, hearing was held on confirmation of the chapter 13 plan of the debtor, Zaida Maria Gracia. The chapter 13 trustee, Robert B. Wilson, objects to confirmation of the plan. Upon the pleadings, the evidence, and arguments made, the Court denies confirmation of Gracia's chapter 13 plan.[1]

**I.**

**A.**

Gracia's plan, as amended, proposes payments for 60 months with monthly payments of $1,800. By her plan, Gracia pays for two car loans, both with Pentagon Credit Union, one on a

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

2016 Mercedes Benz GLC 300, the other on a 2016 Jeep Wrangler.  The balance of the plan

payments go to fees to the Trustee and Gracia's attorney and to unsecured creditors, the total of

which under the plan is reflected to be approximately $210,000.  They include a deficiency claim

held by Mr. Cooper, which is secured by a residence owned by Gracia in Puerto Rico.  ("Mr.

Cooper" is a d/b/a for Nationstar Mortgage.)  The balance of the unsecured claims appears to be

mostly credit card-based claims.  The plan shows a projected payout to unsecured creditors of

20.93%.  The plan states that Gracia will make direct payments (not made through the chapter 13

plan by the Trustee) to Mr. Cooper on the house in Puerto Rico.  The plan states that the present

value of the house is approximately $150,000; the scheduled amount of the claim held by Mr.

Cooper is $178,765.79.

Gracia is married, and she and her husband have two children.  Gracia also provides care

for her 94-year-old mother who lives in a nursing home in Lubbock.  Gracia works as an

administrative dean in the College of Engineering at Texas Tech University; her husband is a

full-time graduate student at Texas Tech.  Gracia's husband receives a stipend as a graduate

student in the amount of $2,300 per month, but, according to Gracia, such stipend ends with the

payment in July when he completes his graduate studies.  Gracia testified that her husband

intends to move to Colorado and will likely file for divorce.  (Since the hearing, the Court has

signed an order granting stay relief so that Gracia may proceed with divorce proceedings.)  As

her husband's stipend ends with the July payment, in completing Form 122C-2 (Debtor's Exhibit

A), Gracia subtracted her husband's income from her total income as an expense, claiming

"special circumstances" under Part 2 of the Form.

**B.**

Gracia testified that the value of her residence in Puerto Rico has dropped considerably in

light of the present financial problems there; this accounts for the negative equity in the house.

She rents the house but at an amount that is approximately $300 less than her monthly mortgage

payment. She said that she purchased the house for approximately $300,000 in 2003. Given the

current financial distress in Puerto Rico, Gracia wants to keep the house with the hope that the

economy will gradually improve thus increasing the value of the house in the future. She does

not believe that she could presently sell the house for an amount sufficient to pay-off the debt on

the house, much less recover what she paid for the house.

### C.

The Trustee objects to Gracia's chapter 13 plan, arguing that it is not proposed in good

faith because her expenses, particularly for keeping the house in Puerto Rico, are too high.

Gracia, through counsel, argues that her expenses—on balance, as measured under § 707(b)(2)—

are within the stated guidelines and thus cannot support a charge of bad faith.

The evidence includes Gracia's Official Forms 122C-1 and 122C-2. Form 122C-1

determines a debtor's current monthly income and commitment period; Form 122C-2 determines

a debtor's disposable income. From Form 122C-1, Gracia's current monthly income is

$12,404.18, which well exceeds the median family income for a family of four in Texas. She

therefore is required to propose a commitment period of 60 months. Form 122C-2 calculates

Gracia's disposable income at $477.92 per month. Her plan, however, reflects disposable

income of $390.12 per month. It appears the Forms 122C-1 and 122C-2 were filed May 11,

2018 and May 15, 2018, respectively, and that the plan submitted for confirmation was filed

March 7, 2018.

**II.**

**A.**

Section 1325(a) of the Bankruptcy Code sets the requirements for confirmation of a chapter 13 plan. That the plan be proposed in good faith is one of the requirements. § 1325(a)(3). The Trustee argues that Gracia's plan is not so proposed. Subsection (b) of § 1325 provides that if the trustee or an unsecured creditor objects to the proposed plan, the "projected disposable income to be received in the applicable commitment period" must be used to make payments to unsecured creditors. This happens by default in the four divisions over which this Court presides, i.e., the Trustee always objects unless all the debtor's disposable income is dedicated to the plan. The Code further defines disposable income as the debtor's current monthly income less amounts reasonably necessary to be expended for the maintenance and support of the debtor and her dependents. § 1325(b)(2). And expenses—those that are reasonably necessary—are determined under subparagraphs (A) and (B) of § 707(b)(2) for an above-median income debtor, such as Gracia. § 1325(b)(3).

In a less than concise fashion, § 707(b)(2)(A) and (B) outlines the debtor's allowable expenses, which are pegged to "applicable monthly expense amounts . . . under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." § 707(b)(2)(A)(ii)(I). (There is more to it than this, but this suffices for the issues here.) Provision (iii) of § 707(b)(2)(A) specifies how payments on secured debts are calculated (the contractually due amount for 60 months then divided by 60) and provides for any additional payments needed to maintain possession of the "debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's

4

dependents . . . ." § 707(b)(2)(A)(iii). Subparagraph (B) addresses "special circumstances" that might exist to "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." § 707(b)(2)(B).

**B.**

**1.**

When a future change to an above-median debtor's income is known or virtually certain, the debtor may take that change into account in formulating a chapter 13 plan. In a 2009 Fifth Circuit opinion, the court held that, upon objection to confirmation by the trustee, a debtor who was to repay herself for 24 months for a loan from her 401(k) retirement plan had to, after the 24 months, add the payments to her disposable income that then pays unsecured creditors. *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 267 (5th Cir. 2009). The court reasoned that, because § 1325(b)(1)(B) calls for the debtor's "projected" disposable income to be applied to debts owed to unsecured creditors, reasonably certain events that will change the debtor's disposable income should be considered in the calculation of disposable income. *Id.* A year later, the Supreme Court, in *Hamilton v. Lanning*, joined the Fifth, Eighth, and Tenth Circuits in adopting this forward-looking approach to projected disposable income, holding that income-affecting events that are known or virtually certain at the time of confirmation may be considered in formulating the plan under § 1325(b)(1)(B). 560 U.S. 505, 509 (2010). As a result, the mechanical approach derived from following § 707(b) serves as a presumption of the debtor's disposable income that may be rebutted by any party (trustee or debtor) with evidence of known or virtually certain future events that will affect income.

**2.**

Gracia properly accounts for her husband's impending loss of income. But she

5

incorrectly includes the loss of income as an expense under "special circumstances" on Line 43

of Part 2 of Form 122C-2. Line 43 is meant to take into account § 707(b)(2)(B), where the Code

non-exhaustively lists a serious medical condition or a call to active duty military as examples of

what might constitute special circumstances. Jurisdictions vary regarding how strictly to

construe special circumstances. *See, e.g., In re Stocker*, 399 B.R. 522, 532 (Bankr. M.D. Fla.

2008) (holding that an antenuptial agreement does not constitute special circumstances because it

is not extraordinary, exceptional, unexpected, or involuntary); *In re Crego*, 387 B.R. 225, 229

(Bankr. E.D. Wis. 2008) (holding that a dysfunctional couple's need to maintain separate

households did constitute a special circumstance because the spouses sufficiently proved that

they could not live together amicably). Gracia's situation does not correspond with the

circumstances contemplated by the statute. More importantly, Form 122C-2 was amended to

include Part 3 after *Nowlin* and *Lanning*, specifically to address situations like Gracia's.[2] Her

husband's loss of income in August appears to be virtually certain and thus should be accounted

for in Part 3 of the Form, rather than in Part 2's "special circumstances" expense provision.

Despite this, Gracia's husband's income is appropriately deducted because the stipend is

virtually certain to end (and not because of their impending divorce). At the confirmation

hearing, Gracia said that her husband has recently contributed a greater portion of his stipend

than in the past to joint expenses. It is not appropriate to disregard her husband's income simply

because she claims that he has historically failed to contribute to household expenses.

### C.

To reiterate, under § 1325(b)(1)(B), (b)(2), and (b)(3), Gracia's plan, to be confirmed,

must meet the expense standards set forth at § 707(b)(2)(A) and (B). Form 122C-2, the use of

---

[2] Part 3 of Form 122C-2 addresses income or expenses that "have changed or are virtually certain to change after the date you filed your bankruptcy petition and during the time your case will be open . . . ."

which is mandated by the Judicial Conference of the United States under Rule 9009, serves to

implement § 707(b), taking into account IRS National and Local Standards in its calculation of a

debtor's disposable income.  Gracia argues that her plan must be confirmed because it pays to

unsecured creditors at least the amount derived from the Form.  The issue is whether Gracia's

good faith requirement requires something of her beyond technical adherence to the Form.  The

Trustee does not challenge the accuracy of Form 122C-2 but argues that Gracia's adherence to

the Form does not conclusively mean that she satisfies the statutory requirement of good faith.

Section 1325(a)(3) states that the court "shall confirm a plan if," with other conditions, it

"has been proposed in good faith."  Though arguably not explicit under the statute, good faith is

construed as a necessary condition for confirmation of a plan.  *See, e.g., Pub. Fin. Corp. v.*

*Freeman*, 712 F.2d 219, 221 (5th Cir. 1983).  And good faith is determined under the totality of

the debtor's circumstances.  *Id.*

The parties here are disputing whether adherence to § 707(b)(2)(A), (B) (and Form 122C-

2) is itself sufficient to satisfy the good faith requirement.  As stated, § 1325(a)(3) requires good

faith—but good faith is not textually a part of the disposable income requirement of subsection

(b).  Similarly, §707(b)(3) states that even when a debtor satisfies (b)(2)(A)—which is to check

the abusive *filing of chapter 7* by a debtor—the court must also consider whether the debtor's

filing is abusive or made in bad faith.  A Northern District of Texas bankruptcy court has

followed this construction in *In re Owsley*: "[C]ompliance with section 1325(b)(3) and section

707(b)(2)(A) is not dispositive of good faith because good faith embraces more than just lawful

compliance with those sections."  384 B.R. 739, 750 (Bankr. N.D. Tex. 2008).  There, debtors

deducted payments for a recreational vehicle to a secured creditor from their disposable income

under § 707(b)(2)(A)(iii).  *Id.* at 749.  The court concluded that the debtors had the burden of

proving that such an expense was necessary for the support of themselves or their dependents. *Id.* It is also the debtor's burden to prove good faith. *Id.* The debtors failed to prove either.

Gracia deducts from her disposable income the expense necessary to keep her house in Puerto Rico under § 707(b)(2)(A)(iii). The *Owsley* decision treats secured debts other than for one's home and two vehicles differently from other debts and expenses, and holds that such secured debts must be proved necessary by the debtor, even if the debtor is current on his payments at the time of filing. *Id.* Following *Owsley*, Gracia must show that the house in Puerto Rico is necessary for the support of her and her dependents, which she failed to do.

The final issue is whether, under the totality of the circumstances, Gracia failed to propose her plan in good faith by maintaining actual expenses that exceed some, but not all, of the IRS Standards. A bankruptcy court within the Fifth Circuit recently addressed this question:

> [T]he above median income debtor in this case is below the Local and National Standards for expenses in several categories and above the Standards in other categories. . . . The question is whether a debtor may offset expenses above the Local or National Standards in one category with expenses below the National and Local Standards in another category.

*In re Briggs*, 570 B.R. 730, 736 (Bankr. W.D. La. 2017). After a detailed discussion of *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011) and the language of the IRS Collection Standards, the *Briggs* court concluded that "a debtor may not net her higher expenses in any other expense categories against *any claimed Local Standard expense* that is below the standard, but may offset excess expenses against *any National Standards expenses* that are below the standard." *Briggs*, 570 B.R. at 743 (emphasis added). Furthermore, an IRS Standard expense may only be exceeded if the debtor is virtually certain to exceed the Standard amount and is unable to reduce his or her actual expense. *Id.* at 744–45. The Court is not here endorsing or rejecting this view, however.

**III.**

The parties have raised and obviously want the Court to decide whether Gracia's plan has been proposed in good faith.  The Court has wrestled with this question but, ultimately, has decided there are other, more basic problems here that prevent the Court from confirming Gracia's plan as proposed.  First, the disposable income under the plan is $390.12 per month.  This does not match the disposable income of $477.92 that results from Form 122C-2.  Second, it appears that the form fails to account for Gracia's complete rental payment per month as reflected on her Schedule J.[3]  While she may be entitled to take the amount under the applicable standard, her actual expense is greater than the $1,084.00 per month that she states is the standard.  Her schedule J shows a rent payment of $1,500.00 per month.  Third, it is not necessary that she keep the house in Puerto Rico, and thus maintaining the house at a loss is not reasonable.  Judge Nelms's opinion in *Owsley* thoroughly analyzed a chapter 13 debtor's right to keep (and pay for) secured property that is not either a car or the primary residence and concluded that such property must be necessary.  384 B.R. at 749.  The Court agrees with Judge Nelms.  In short, Gracia loses about $300 per month by keeping the Puerto Rico residence.  She testified that she has no intent of going back to Puerto Rico.  Her desire to keep the house with the mere hope that its value will increase over time does not make it necessary.  Fourth, Gracia's husband's income, the stipend, is certain to end and thus its termination must be accounted for in determining her *projected* disposable income, and so too must the stipend payments received during the initial stages of the chapter 13 case.  The stipend is not a special circumstance.  Finally, as Gracia's divorce from her husband now appears imminent, her husband's contribution to the family is unclear.

---

[3] This expense relates to Gracia's Lubbock residence as reflected on line 4 of her Schedule J.

The Court cannot, at this time, assess whether Gracia has proposed her plan in good faith. The basic facts here are too unsettled to favorably consider Gracia's plan for confirmation. The Court will therefore deny confirmation of Gracia's plan and, in doing so, assumes Gracia, with the aid of counsel, will submit an amended plan with amended official forms that are consistent with one another and recognize unavoidable actual expenses from her Schedule J.

### End of Memorandum Opinion ###